```
COOLEY LLP
MICHAEL A. ATTANASIO (151529)
(mattanasio@cooley.com)
WILLIAM V. O'CONNOR (216650)
(woconnor@cooley.com)
CHARLES E. HARRISON (313028)
(charrison@cooley.com)
10265 Science Center Drive
San Diego, California  92121-1117
Telephone:  +1 858 550 6000
Facsimile:  +1 858 550-6420

Attorneys for IKHANA Group LLC
IKHANA Group LLC
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IKHANA GROUP LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>VIKING AIR LIMITED,<br><br>       Defendant. | Case No.: **'23CV1306 BAS DEB**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff IKHANA GROUP, LLC ("Ikhana"), for its Complaint against VIKING AIR LIMITED ("Viking"), hereby alleges as follows and demands a jury trial on all the issues so triable.

**I.    NATURE OF THE ACTION**

1.     This civil action is necessary to halt a brazen scheme by Viking's new management to misappropriate Ikhana's intellectual property, including Ikhana's Federal Aviation Administration ("FAA")-approved aftermarket modifications for Viking aircraft.  Viking's transparent anti-competitive conduct finds no support in the parties' agreement or under California law.  This action seeks to vindicate Ikhana's bargained-for rights under a license agreement that has been mutually beneficial to Viking and Ikhana for decades.

2. Headquartered in Solana Beach, Ikhana is a leading aerospace company primarily engaged in the modifying, manufacturing, and maintaining of aircraft. The company has over 100 employees and is an integral part of San Diego's storied aerospace history. Ikhana's success is built on over thirty years of experience working with original aircraft manufacturers—also known as "type certificate holders"—to improve their products and extend aircraft life in the field. In this way, Ikhana serves a critical role in U.S. aviation, supporting aircraft operators who wish to modernize their older aircraft or customize the aircraft's configuration to suit specific mission needs, while also respecting the property rights, if any, of the type certificate holder. Viking is one such type certificate holder.

3. Ikhana's special expertise extends to all aspects of aircraft design and certification, a field that is extensively regulated by the FAA and equivalent foreign civil aviation authorities, such as Transport Canada ("TC"). Ikhana's engineers and programs are highly sought after from all corners of the world, and the company's customers include the U.S. military, foreign governments, research institutions, and numerous public agencies with critical mission needs, such as wildfire suppression and search and rescue. Type certificate holders, including Viking, also offer their customers Ikhana's modifications and upgrades when selling new aircraft. In many ways, Ikhana is like the Shelby American to Viking's Ford.

4. Making major changes to an airplane is not an easy task, and it is subject to significant government safety oversight. Ikhana invests tens millions of dollars and years at a time to seek FAA approval for any aircraft to be modified from its original type design. Upon a successful application to the FAA, any proposed changes and modifications are deemed approved when the FAA issues a Supplemental Type Certificate ("STC").

5. Ikhana and Viking have an extended and, until recently, mutually beneficial business partnership. The companies and their predecessor entities have worked cooperatively for almost 30 years to develop STCs for the DHC-6 Twin Otter

series aircraft (the "Twin Otter"), a turboprop airplane that typically seats between 18 and 20 passengers and performs a variety of non-passenger carrying missions.



*Figure 1.  An Ikhana-modified Twin Otter*

6. As part of its work on Twin Otter STCs, Ikhana sought and received licenses to access certain aircraft data from Viking and its predecessors beginning in the 1990s (the "STC license").  Ikhana has paid millions of dollars in royalties to Viking on sales of the Twin Otter STCs, as well as on the purchase of parts.  It has otherwise complied in all material respects with its obligations to Viking, including with respect to the use of its licensed data.

7. The highly successful Ikhana Twin Otter STCs include programs to: (1) add updated engines with more horsepower; (2) replace aging Twin Otter aircraft structures, such as wings, control surfaces, fuselages, and engine nacelles; and (3) modify the Twin Otter to increase its maximum takeoff weight ("MTOW"), which is the subject of the present dispute.[1]

8. Beginning in December 2022, Viking and its new management team abruptly backtracked and sought to renege on its decades-long business partnership

---

[1] An increase in MTOW will allow the aircraft operator to carry more passengers and fuel, and it opens up other possibilities, including allowing the aircraft to carry more fire retardant material onboard during wildfire suppression by air.

with Ikhana. Under the guise of introducing its new leadership, Viking ambushed Ikhana with unsupported legal theories designed to force Ikhana out of the market. Specifically, through a tortuous and circular reading of the parties' license agreement, Viking asserted that Ikhana cannot market its latest MTOW upgrade for the 400 series Twin Otter. Apart from being wholly inconsistent with the parties' course of performance, Viking's newfound position is nonsensical in light of the fact that many of the Ikhana STCs developed under the STC license ***already include the 400 series and*** *have specifically authorize increased maximum takeoff weight.*

9. Since December 2022, Ikhana has attempted to resolve its dispute with Viking through discussions and meetings among the parties' respective executives. Additionally, Viking and Ikhana exchanged correspondence, including a February 3, 2023 letter from Viking to Ikhana, a February 15, 2023 response letter from Ikhana to Viking, and a May 19, 2023 reply letter from Viking to Ikhana, all of which are incorporated herein by reference.

10. When Ikhana did not give into Viking's demand ***to surrender all its Twin Otter STCs to Viking for no consideration***, Viking doubled down by purporting to terminate the parties' STC license agreement and to revoke Ikhana's status as an authorized Viking service center.[2]

11. In a further illegal act of bad faith, Viking now refuses to sell Twin Otter parts to Ikhana, which will interfere with Ikhana's ability to maintain Twin Otters for its customers all over the world and to sell FAA-approved STCs for much needed Twin Otter upgrades and modifications.

12. Absent shutting its doors, which is what Viking wants, Ikhana has no other choice but to turn to the courts to maintain the status quo and to declare Ikhana and Viking's respective rights and obligations, specifically with respect to the disputed termination of the STC license. Ikhana also seeks to hold Viking

---

[2] Viking's purported termination notice and Ikhana's response rejecting Viking's termination notice, dated June 23, 2023 and June 30, 2023, respectively, are incorporated herein by reference.

accountable for its breach of the covenant of good faith and fair dealing that is implied in every contract entered into in the United States, including contracts governed by California and New York law.  Finally, Ikhana seeks to prevent Viking's further unlawful and unfair business practices under California's Business and Professions Code Section 17200.

## II.   THE PARTIES, JURISDICTION AND VENUE

13.   Ikhana is a California limited liability company with a principal place of business at 440 Stevens Avenue, Solana Beach, California 92075.

14.   Upon information a belief, Viking is a company incorporated in British Columbia, Canada and has an address of 1959 De Havilland Way, North Saanich, British Columbia, Canada V8L 5V5.

15.   This Court has jurisdiction under 28 U.S.C. §1332(a)(2) because the action involves a dispute between a California limited liability company and a Canadian corporation.  The amount in controversy exceeds $75,000.

16.   This Court also has jurisdiction pursuant to the laws of California, including the state's long-arm statute, California Code Civil Procedure section 410.10, because Viking has contracted to do business in California with Ikhana and it would not be unreasonable for Viking to be subject to jurisdiction in California: (1) Viking entered into the STC license in California; (2) Viking contracted to provide its data to Ikhana in California; (3) Viking contracted to receive Ikhana's royalty payments from California; (4) Viking's purported termination of the STC license was sent to Ikhana in California; (5) Viking breached the implied covenant of good faith and fair dealing in California; (6) Viking engaged in unfair and unlawful business practices in California; and (7) Ikhana performed all its material obligations to Viking in California.  All of these activities in California are related to the present dispute.

17.   Venue is proper under 28 U.S.C §1391 because Viking is subject to personal jurisdiction in this district, the events giving rise to Ikhana's claims occurred

in this district, including Ikhana's injuries, and the disputed property—Viking's licensed data—is located in this district.

## III. FACTUAL ALLEGATIONS

18. The governing STC license agreement between Viking and Ikhana (as successors to Bombardier, Inc. and R.W. Martin Inc., respectively) is dated July 21, 2003 (the "Agreement"), under which Viking granted Ikhana the right to use Twin Otter aircraft data for the development of Ikhana's STCs. (Agreement at §1.3.1.)

19. The Agreement is governed by New York law. (Agreement at §15.1.)

20. The Agreement references STCs issued to Ikhana for Twin Otters under a prior license and additional Ikhana STCs issued by the FAA and STCs under development by Ikhana at the time. (Agreement at § 1.2.1; Appendixes A and C.)

21. The Agreement authorizes future Twin Otter STCs that Ikahana would develop and further provides that Viking will support Ikhana in the application process with the FAA, TC, or other civil aviation authorities. (Agreement at § 1.2.2.)

22. The Agreement also states that Viking and Ikhana shall work together to identify additional enhancement programs for the Twin Otter series aircraft, which would be subject to royalties under the Agreement for any future STC issued to Ikhana. (Agreement at § 1.2.2.3.)

23. The Agreement recognizes further development in the design and testing of the Twin Otter series aircraft by Viking and, to the extent such further development requires any change or amendment to an Ikhana STC, the cost to modify any such STC is the responsibility of Ikhana. (Agreement at § 2.2.)

24. Viking and Ikhana agreed to a royalty for any existing STC and determined a royalty rate to be applied to any future STC, which could be adjusted within a specified range, based on existing market conditions. (Agreement at §§ 3.2, 3.3., Appendix A.)

25. Among the STC programs listed in the Agreement as being in development are projects to increase the MTOW for Twin Otter series aircraft. (Agreement at Appendix A.)

26. Upon issuance of any future STCs, Ikhana would pay the agreed-upon royalty to Viking, at which point the applicable STC became an Addendum to the Agreement. (Agreement at § 3.3.)

27. Through this process, Viking and Ikhana added eight such STCs by Addendum to the Agreement, which are also reflected in the royalty information and reports provided to Viking pursuant to the Agreement. (Agreement at § 3.5.)

28. Viking has audit rights with respect to Ikhana's royalty payments. (Agreement at § 3.7.) Viking has exercised its audit rights in the past and never objected to the manner in which STCs were added to the Agreement by Addendum, including a 2018 audit that found no major discrepancies in Ikhana's method for paying and calculating royalties for its Twin Otter STCs.

29. Something changed last year, however, when Ikhana began to market its latest STC for a MTOW increase to the 400 series Twin Otter.[3] Viking incorrectly asserted that Ikhana is in breach of the Agreement by alleged unauthorized use of Viking data to develop Ikhana's latest 400 series STC. Putting aside that no Viking data is necessary to amend an existing STC for which Ikhana already pays royalties – and even if it were necessary, Ikhana has a valid license to it – Viking nevertheless proceeded to terminate the Agreement, claiming in bad faith that Ikhana is in default in the performance of material obligations under the Agreement. (Agreement at § 9.1; Viking Termination letter, dated June 23, 2023.)

30. Viking's improper termination of the Agreement has injured Ikhana and will cause irreparable harm to Ikhana's business absent a temporary restraining order and/or preliminary injunction.

---

[3] Ikhana's latest MTOW increase for 400 series Twin Otters is proposed for an amendment to an existing STC increasing MTOW for 300 series Twin Otters (FAA SA02682LA).

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(DECLARATORY JUDGMENT AS TO TERMINATION OF LICENSE AGREEMENT)**

31. Ikhana incorporates by reference paragraphs 1 through 30 as if set forth here in their entirety.

32. There is a justiciable controversy within the jurisdiction of this Court between Viking and Ikhana regarding Viking's purported termination of the Agreement. Viking contends that Ikhana's marketing of its latest 400 series MTOW upgrade constitutes a default in performance of a material obligation under the Agreement because, according to Viking, the Agreement does not apply to 400 series Twin Otters. Ikhana disputes this contention and asserts that it has satisfied its obligations under the Agreement, including with respect to the use of any licensed data for its STCs and the payment of royalties to Viking.

33. Based on the foregoing allegations, declaratory judgment is necessary to clarify and settle the legal rights and duties of the parties under the Agreement and afford relief to Ikhana from Viking's improper termination, and the uncertainty, insecurity and controversy associated with Viking's efforts interfere with Ikhana's business and customer relationships by purporting to strip Ikhana of its rights by terminating the Agreement.

34. Pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57, Ikhana seeks a declaration that:

    i. The Agreement is valid and enforceable and remains in full force and effect.

    ii. That Ikhana is not in default with respect to a material obligation under the Agreement in connection with the development of the latest STC to increase MTOW for Twin Otter series aircraft.

   iii. That Viking's purported termination of the Agreement is null and void *ab initio* and without further effect.

   iv. That Viking shall have the right to sell the latest STC upon approval by the FAA of the amendment to STC number FAA SA02682LA to include 400 series Twin Otters.

## SECOND CAUSE OF ACTION

**(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**

35. Ikhana incorporates by reference paragraphs 1 through 34 as if set forth in their entirety.

36. The Agreement between Viking and Ikhana contains an implied covenant of good faith and fair dealing by which Viking promised to act in good faith and deal fairly with Ikhana and promised not to prevent Ikhana from receiving any part of the benefits that Ikhana was entitled to under the Agreement.

37. Viking breached this covenant by its conduct alleged above, by failing to act in good faith and deal fairly with Ikhana, and by preventing Ikhana from receiving the benefits to which Ikhana is entitled under the Agreement by its purported termination of the Agreement.

38. As a result of Viking's breach of the covenant of good faith and fair dealing implied in the Agreement – an Agreement under which the parties have paid millions of dollars over the course of their business relationship – Ikhana has suffered damages well in excess of $75,000 for which Viking is liable.

## THIRD CAUSE OF ACTION

**(UNFAIR COMPETITION – CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 *ET SEQ.*)**

39. Ikhana incorporates by reference paragraphs 1 through 38 as if set forth in their entirety.

40. The actions of Viking described above constitute willful, deliberate, unlawful and unfair business practices under California Business and Professions Code Section 17200 *et seq*. Viking has engaged in a campaign to eliminate Ikhana from the market for STC upgrades and modifications to Twin Otter series aircraft in order to monopolize all aftermarket modifications. Viking's manufactured claims of Ikhana's improper use of licensed data, its false claims to Ikhana's property, including the Twin Otter STCs, the unjustified, bad faith termination of the Agreement, the revocation of Ikhana's status as an authorized Viking service center, and its refusal to sell any Twin Otter parts to Ikhana, has and will continue to cause Ikhana's great and irreparable injuries that cannot be compensated by remedies at law.

41. There is no legitimate business justification for Viking's actions to interfere with Ikhana's Twin Otter STCs and the market for upgrades and modifications generally for Twin Otter series aircraft. Viking itself does not have STCs to replace any Ikhana STCs if it succeeds in preventing Ikhana from participating in the STC market for Twin Otter series aircraft. Viking's conduct is in violation of state and federal antitrust laws and the public policies promoted by those laws, including the Cartwright Act, the Sherman Act, 15 U.S.C. § 2, the FTC Act, 15 U.S.C. § 45, and Section 16727 of the California Business & Professions Code.

42. Ikhana seeks injunctive relief barring Viking from continuing to attempt to interfere with its lawful FAA STC applications, including through its termination of the Agreement and other conduct described above, from interfering with Ikhana's relationships with its customers and suppliers, and for all damages, penalties, and other monetary relief to which Ikhana is entitled, including attorney fees to the extent provided by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff IKHANA GROUP, LLC prays for relief as follows:

i. A declaration as described in Paragraph 34 and an order and award of specific performance in accordance with that declaration.

ii. Judgement in favor of Ikhana and against Viking for its breach of the implied covenant of good faith and fair dealing, including for damages Ikhana has suffered and will suffer, and pre-judgment and post-judgment interest permitted by law.

iii. For injunctive relief prohibiting Viking and its agents and assigns from the unlawful and unfair business practices described above.

iv. Such other and further relief as this Court deems just and proper.

v. Ikhana demands trial by jury.

Dated: July 17, 2023

COOLEY LLP

By: _____
William V. O'Connor

Attorneys for IKHANA Group LLC